164 N.J. Super. 21 (1978)
395 A.2d 546
JOHN BELL AND FLORENCE BELL, HIS WIFE, RESPONDENTS,
v.
CITY OF CORBIN CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1978.
Decided November 24, 1978.
*22 Before Judges LYNCH and HORN.
Mr. Richard A. Russell argued the cause for appellant (Messrs. Loveland, Garrett & Russell, attorneys).
Mr. Leland A. Stanford argued the cause for respondents (Messrs. Stanford & Bruce, attorneys; Mr. William H. Bruce III on the brief).
The opinion of the court was delivered by LYNCH, P.J.A.D.
The City of Corbin City appeals from a judgment of the Division of Tax Appeals which vacated a $3,800 real property assessment on a "mobile" home owned by respondents John Bell and Florence Bell, his wife.
The judge of the Division held that the home involved was personal property, saying that the subject case stands *23 "four square" with the case of Manhattan Trailer Ct. v. North Bergen Tp., 104 N.J. Super. 405 (App. Div. 1969). We disagree and reverse.
The Bells are residents of Pennsylvania and use their mobile home in Corbin City for weekends and vacations. The home, which measures 12' by 60', is located on a 75' by 150' piece of land which is owned by the Bells. It rests on a concrete "pad" or "slab" and is supported by columns of concrete blocks spaced approximately 7' apart. It is further secured to the concrete pad by a series of chains connected to anchor bolts which were set into the concrete at the time it was poured. Concealing these underlying supports was a "skirting" surrounding the space between the bottom of the home and the ground. The skirting was required by the applicable local ordinance but it could be slipped off at any time.[1] The axles were still connected to the home although the wheels had been removed and were lying on the ground underneath.
The home is connected into on-site water and septic systems. Water is pumped into the home from a pump situated under it through two plumbing fixtures characterized as "unions" or "fittings." Sanitary facilities are provided by a 900-gallon septic tank buried on the property for the exclusive use of the home. Electrical service is supplied by a direct line providing 100 ampere service into a switch *24 panel or circuit breaker tied into the electrical system, as contrasted to a "plug in" connection.
The community in which the trailer is located consists of six blocks on which there were from 35 to 40 homes. There were "quite a few" summer residents in the community and "quite a few" permanent residents. At the time of the hearing the Bells had owned the home for about four years. During that time Bell saw only one home moved off its pad and four new homes had come in. There were no "transients," i.e., people who would be there for a week or two weeks and then leave with their trailers.
Mr. Bell testified that the home was not the type of trailer which one would unhook and travel in for short vacations. It would require a professional mover to detach it and it would take about eight hours to prepare it for moving.
It was Bell's intention that the home was to stay where it was for the "foreseeable future." It is inferable that the other owners of mobile homes in the community had the same intention. In the exercise of our original jurisdiction we so find. R. 2:10-5.
Under the foregoing facts we conclude that this case is not, as was said by the Division judge, "four square" with the decision in Manhattan Trailer Ct. v. North Bergen Tp., supra. In that case, the operation involved was a "trailer court" containing 50 spaces which were "rented on a daily, weekly or monthly basis." The land on which the "trailers" were parked was not owned by the "trailer" owners, whereas here the land was owned by the Bells and not the operator of the trailer park. Also, in Manhattan Trailer the wheels remained on the trailers. And the utilities were connected with "plug in" or "hook-up" fixtures. Not so here. In Manhattan Trailer, of the 47 trailers occupying the court at the time the appeal was heard, six or seven rented on a "daily basis and were considered transients." Half of the remaining 40 were there "less than a year." The remaining trailers were there for varying periods of time of more than a year, *25 with one or two having stayed eight or nine years, and one 11 or 12 years. Id. at 407. Here there is no evidence of "transients" in the community. Bell and, inferably, his fellow owners had the intention to remain on their land for the foreseeable future. Since they owned that land it may not be inferred that they intended to abandon the use to which it was committed  for a mobile home, with its utility and septic tank connections. Lastly, Bell testified that he estimated that it would take about eight hours  a full working day  to prepare his home for moving. In Manhattan Trailer the homes could be prepared for moving in one hour, after which they would be driven off on the wheels which were already attached.
In Westinghouse Broadcasting Co., Inc. v. Director, Div. of Taxation, 141 N.J. Super. 301 (App. Div. 1976), the issue was whether four large radio broadcasting towers were taxable as real estate. They were secured to concrete foundations but could be "readily dismantled by removing the bolts which hold them together, transported to another location and reassembled." Id. at 304.
This court said:
Various tests have been established to determine when a movable chattel loses its character as personally and becomes a fixture and, thus, part of the realty. They were restated in the case of National Lead Co. v. Sayreville, 132 N.J. Super. 30 (App. Div. 1975), following Fahmie v. Nyman, 70 N.J. Super. 313, 316-317 (App. Div. 1961), as follows:
They are when it is: (1) actually affixed to the realty or something appurtenant thereto, (2) appropriated to the use or purpose of that part of the realty with which it is annexed, and (3) intended by the party making the annexation to be a permanent accession to the freehold. [132 N.J. Super. at 38-39].
The modern view is that the intention in the placement of the structure on the land is the dominant factor to be considered in making the determination of its character. Fahmie v. Nyman, supra 70 N.J. Super. at 317. [141 N.J. Super. at 305; emphasis supplied]
The court held that the towers were taxable as real estate despite the fact that they could readily be dismantled and *26 removed. The court cited with approval Standard Oil, &c. v. Atlantic City, 18 N.J. Misc. 582, 15 A.2d 271 (B.T.A. 1940), where it was said:
The question as to whether or not a structure constitutes an improvement of the ground, so as to partake of the status of realty, depends upon the degree of permanence intended in its erection and use. [at 583; emphasis supplied]
While in Westinghouse and Standard Oil the structures were affixed into the soil, the predominant theme of the cases is that, as said in Westinghouse, the intention in the placement of the structure on the land is the "dominant factor" to be considered in making the determination of its character.
We recognize that in Nelson Cooney & Son, Inc. v. South Harrison Tp., 57 N.J. 384 (1971), our Supreme Court said (at 389) that,
"Mobile homes, however, are not taxable under present statutes in this state as either real or personal property.[2]"
The footnote in support of that statement consists of citation of the decision in Manhattan Trailer Ct. v. North Bergen Tp., supra, which we have hereinabove distinguished from the instant case. Further, the statement in Nelson Cooney was dictum for the issue as to whether the homes there involved were taxable as real property was not in the case; rather it related to the validity of a licensing ordinance imposing a fee upon a mobile home park.
The question here is not entirely free from difficulty[2] *27 but we conclude that, considering all the circumstances recited above, the Bells intended that their mobile home was to be a permanent accession to the freehold. It is therefore taxable as real estate and thus the Bells should share the cost of local government and its services with other taxpayers. The judgment of the Division is reversed.
NOTES
[1] Under a Corbin City municipal ordinance, if a mobile home is not located in a trailer park it must be

* * * permanently placed on land owned by an occupant of said Mobile Home, who shall also be an owner of said Mobile Home, which Mobile Home shall be placed on a safe, permanent and adequate foundation supporting the underframe and with its wheels removed, shall be secured and bolted on all corners and shall have skirting without loose blocks placed around the foundation, which foundation shall include piers of solid concrete, cinder blocks or their equivalent, each pier to be at least 8 inches by 16 inches in size and spaced not more than 8 feet on center, and said Mobile Home shall be placed on a concrete slab at least 4 inches thick extending to the exterior of said Mobile Home in each direction.
[2] See n. 3 in Nelson Cooney & Son, Inc. v. South Harrison Tp., supra, 57 N.J. 384, for authorities discussing various methods of treatment of mobile homes for revenue purposes. See also, Manhattan Trailer Ct. v. North Bergen Tp., noting that some states have attempted to solve the problem of the taxable character of mobile homes by statutory amendment. 104 N.J. Super. at 407, 408. If judicial determination thereof is found to be unduly diverse, depending on the particular circumstances in each case, the remedy to accomplish uniform treatment lies readily within the legislative power.