179 N.J. Super. 307 (1981)
431 A.2d 862
TOWNSHIP OF COMMERCIAL, A MUNICIPAL CORPORATION IN THE COUNTY OF CUMBERLAND, AND STATE OF NEW JERSEY, PLAINTIFF,
v.
BLOCK 136, LOT 2, NOW LOT 13, DEFENDANT.
Superior Court of New Jersey, Chancery Division Cumberland County.
Decided March 5, 1981.
*309 James J. Seeley for plaintiff (Stanger & Seeley, attorneys).
Harold Wovsaniker for defendant (Wovsaniker & Wovsaniker, attorneys).
GRUCCIO, A.J.S.C.
This matter comes before me upon plaintiff's motion for partial summary judgment in this in rem action to foreclose a tax lien against a parcel of land and mobile home of Arthur Stubbs and Emma Askins Stubbs. Intervenor Heritage Bank-North (the "bank") holds a purchase money security agreement on the aforementioned mobile home sold to Emma Askins Stubbs, and opposes plaintiff's motion.
There are two legal issues presently before the court for determination. First, whether or not mobile homes are subject to taxation as improvements to real estate ("fixtures") where they are utilized as permanent dwellings. Second, whether municipal real estate tax liens on fixtures have priority over *310 security interests in the personal property that became a fixture; more specifically, plaintiff moves to have this court resolve the priority dispute between the parties with reference to N.J.S.A. 54:5-9 and N.J.S.A. 12A:9-313.
The facts are not in dispute. On or about February 25, 1975 Emma Askins (Stubbs) purchased a mobile home from Mobile-towns, Inc. and executed and delivered to it a purchase money retail installment contract. The sales tax was paid, and thereafter the installment contract was assigned to First Charter National Bank, now known as Heritage Bank-North, the intervenor here. The bank's security interest in the mobile home was recorded with the Director of Motor Vehicles on the certificate of ownership dated March 18, 1975. The mobile home was then placed on land by Arthur and Emma Stubbs, which land is the subject of plaintiff's in rem foreclosure in the present action.
Plaintiff has a tax sale certificate on Block 136, Lot 13, and seeks to foreclose. Intervenor claims a priority as to its lien on the mobile home. Plaintiff contends that mobile homes are subject to taxation as improvements to real estate where they are utilized as permanent dwellings. Intervenor maintains that the mobile home is personal property and that even if it is not, intervenor still holds a prior lien.
The mobile home measures 24 by 60 feet and was located on the subject property on or about April 16, 1975. The taxes on the premises for which the tax lien was sold and the in rem foreclosure action brought included taxes on the land and on the mobile home.
Plaintiff is correct in its assertion that under the Commercial Township zoning ordinance applicable here, the siting of modular homes on individual lots rather than in mobile home parks is permitted only where such residences are to be used as permanent dwellings. The ordinance provides, in pertinent part:
A Mobile Home not in a Mobile Home Park shall be permanently placed on land owned by the owner or owners of said Mobile Home, shall also be placed on a safe, permanent and adequate foundation supporting the under frame and with its wheels removed, and shall have skirting placed around the foundation....

*311 Such Mobile Home shall be considered as a dwelling house, building or structure and shall have a water supply and sewerage system which shall comply with local and State sanitary law....
The mobile home here is connected to an on-site septic system and well. It is attached to electric service and an on-site water supply system.
Plaintiff cites the cases of Bell v. Corbin City, 164 N.J. Super. 21 (App.Div. 1978), and Koester v. Hunterdon Cty. Bd. of Taxation, 79 N.J. 381, (1979), in support of its position that mobile homes are subject to taxation as improvements to real property when they are used as permanent dwellings. I agree and find that the mobile home here was properly taxed.
In Bell the City of Corbin City appealed a judgment which vacated a real property assessment on a mobile home. The mobile home involved measured 12 by 60 feet, was supported by concrete blocks and was secured to a concrete pad. The mobile home was secured to the realty in accordance with a local ordinance almost identical to the ordinance of Commercial Township, previously cited.
The mobile home in Bell was used by respondents only on weekends and vacations, but it was connected to on-site water and septic systems and was connected to electrical service directly rather than by a "plug in" connection. Respondent testified that although the home could be detached, it was not the type of trailer which one would unhook and travel in; that it would take a professional mover to detach it and would, at that, take about eight hours to remove. As in the situation now before the court, the mobile home in Bell sat on land owned by the mobile home owners.
The Appellate Division concluded that, considering all of the circumstances, respondents "intended that their mobile home was to be a permanent accession to the freehold. It is therefore taxable as real estate and thus the Bells should share the cost of local government and its services with other taxpayers." 164 N.J. Super. 21, 27. However, there is no question that the court foresaw problems in treatment of mobile homes for revenue *312 purposes and noted that uniform treatment lies within legislative power. See n. 2 in Bell v. Corbin City, at 26.
In Koester v. Hunterdon Cty. Bd. of Taxation, supra, our Supreme Court granted certification to decide whether the mobile homes in a "mobile home park" were taxable as real property. The homes there were also to remain on site permanently; removal would have required heavy machinery for detachment and damage to landscape.
The court distinguished the situation in Koester from that in Nelson Cooney & Son, Inc. v. South Harrison Tp., 57 N.J. 384 (1971), wherein the court held that mobile homes were not taxable under present state statutes as either real or personal property. 57 N.J. at 389. The Koester court noted that previously the type of "mobile homes" involved had been transient-type house trailers and that the prior holdings of the court would be "inappropriate when sought to be applied to modern single or double width homes placed on sites, either within or without mobile home parks, with a view toward their remaining there permanently as family dwellings." 79 N.J. at 388. Such is the case before me now. The "mobile home" situated on the subject premises here is so attached to the realty and with such intention as to constitute a permanent improvement to the realty and is thus subject to applicable real estate taxes.
Next I am called upon to resolve the priority dispute between plaintiff's lien and the security interest held by intervenor. In relation to this dispute, the Supreme Court in Koester, supra, noted:
The Mobile Homes at Solitude Village were generally financed by security agreements which were apparently executed and filed under the Uniform Commercial Code... Questions may be raised as to whether mobile homes constructed and intended at inception to be attached to realty, should not be financed in the same manner as conventional homes. The subject was not dealt with below and is not properly before us for determination. In any event it should more appropriately be dealt with in comprehensive legislation applicable to mobile homes. [79 N.J. at 395]
*313 This dispute, however, arises before the enactment of appropriate legislation and thus I am constrained to follow the applicable law as it exists at present.[1]
It is plaintiff's position that N.J.S.A. 54:5-9 should control. That statute provides:
Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens.
It follows then, that plaintiff maintains that whatever interest intervenor holds is an interest or encumbrance on land. Such is not the case, although it is true that intervenor acquired an interest in a chattel "constructed and intended at inception to be attached to realty." Koester v. Hunterdon Cty. Bd. of Taxation, supra 79 N.J. at 395. The mobile home is, then, a former chattel which, while retaining its separate physical identity, is so connected with the realty that a disinterested observer would consider it a part thereof. White and Summers, Uniform Commercial Code, § 25-8 at 926 (1972); see, also, Bayonne v. Port Jersey Corp., 79 N.J. 367 (1979). In other words, a fixture. Until the Legislature speaks to the matter of financing mobile homes, it is clear that the language in both Bell and Koester, *314 supra, requires this court to treat the subject mobile home as a fixture and determine the priority dispute herein accordingly.
I turn now to examine the interest acquired by the bank. Under the Uniform Commercial Code, as adopted in New Jersey, a "security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. N.J.S.A. 12A:1-201(37). A security interest is a purchase money security interest to the extent that it is taken or retained by the seller of the collateral to secure all or part of its price. N.J.S.A. 12A:9-107(a). Intervenor bank is the holder of a purchase money security interest. A security interest attaches when there is an agreement that it attach and value is given and the debtor has rights in the collateral. N.J.S.A. 12A:9-204(1) (emphasis supplied).
Pursuant to the aforementioned statutory requirements, the bank's security interest attached on or about February 25, 1975. As for perfection of the security interest, N.J.S.A. 12A:9-302 requires that a financing statement be filed to perfect a security interest in a fixture or for a motor vehicle required to be licensed. That section further provides that filing is not required to perfect security interests in property subject to a state statute which requires indication on a certificate of title of such security interest in such property. In such an instance the only way to perfect a security interest is by indicating the security interest on the certificate of title.
Prior to the decisions in Bell and Koester, supra, a motor home, such as we have here, was not considered a fixture; thus, in order to perfect an interest in a motor home, the only recourse of the secured party was to record it on the certificate of ownership issued by the Department of Motor Vehicles and file it pursuant to N.J.S.A. 39:10-11. Accordingly, when the bank recorded its security interest in the mobile home with the Director of Motor Vehicles on the certificate of ownership on March 18, 1975, it had perfected its interest in the chattel.
*315 Before resolving the priority dispute herein, it should be noted that since our Supreme Court's pronouncement in Koester, mobile homes such as concern us here are to be treated as fixtures and the requirements for perfecting security interests in such items are, necessarily, altered. N.J.S.A. 12A:9-401 requires that the proper place to file in order to perfect a security interest in goods which at the time the security interest attaches are or are to become fixtures, is in the office where a mortgage on the real estate concerned would be filed or recorded. However, that section further provides that a filing made in good faith in an improper place, as is the case herein, is nevertheless effective with regard to collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.
In light of the decisions in Bell and Koester, the bank has improperly filed its security interest. However, in view of the circumstances now before me, plaintiff is deemed as having knowledge of the bank's interest and the bank's good faith filing, although presently improper is effective against plaintiff and is effectively perfected.
As for the priority of the interests involved here, N.J.S.A. 12A:9-313 controls. Professors White and Summers make the point that neither § 9-313, nor any other part of Article 9 of the Uniform Commercial Code, purports to preempt this field with respect to creation or perfection of security interests in fixtures. In fact, the last sentence of § 9-313(1) (also adopted in New Jersey) explicitly states, "This Act does not prevent creation of an encumbrance upon fixtures or real estate pursuant to the law applicable to real estate." Professors White and Summers note that if the real estate law of a particular state defines some object as a fixture and provides that a real estate mortgage attaches to such fixture, the Code recognizes such an interest and § 9-313 only determines its priority vis a vis personal *316 property interests. White and Summers, Uniform Commercial Code, § 25-9 at 927. As yet, the New Jersey Legislature has not spoken as to whether a real estate mortgage or other realty interest (other than the judicially sanctioned real estate tax) would attach to a mobile home. Thus we are constrained to follow the priorities as previously established by our laws.
N.J.S.A. 12A:9-313(1) is inapplicable to the instant case. It provides that the priority rules of this section do not apply to goods incorporated into a structure in the manner of lumber, bricks, tiles, glass, etc., and that no security interest in them exists under this chapter unless the structure remains personal property. We are not here considering a security interests in "goods incorporated into a structure"; rather, we are considering a security interest in the structure itself.
Subsection (2) of the statute provides that a security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4). This is the applicable portion of the statute. This court has decided that plaintiff cannot claim a priority by virtue of N.J.S.A. 54:5-9 since the interest the bank holds is not one in realty but in a chattel. Further, that the bank's interest "attached" on or about February 25, 1975. The mobile home did not become a fixture until April 16, 1975, the day it was located on the subject premises. Therefore, unless the bank's security interest is defeated by an interest in § 9-313(4), it has priority.
N.J.S.A. 12A:9-313(4) provides that the security interests described in subsection (2) do not take priority over:
(a) a subsequent purchaser for value of any interest in the real estate; or
(b) a creditor with a lien on the real estate subsequently obtained by judicial proceedings; or
(c) a creditor with a prior encumbrance of record on the real estate to the extent that he makes subsequent advances
if the subsequent purchase is made, the lien by judicial proceedings is obtained, or the subsequent advance under the prior encumbrance is made or contracted for without knowledge of *317 the security interest and before it is perfected. (Emphasis supplied).
Plaintiff contends that it is in a position similar to that of a subsequent purchaser for value of a tax lien certificate on the real estate as described in § 9-313(4)(a). Apparently, the tax lien on the subject property was offered for public sale and bid in by the township because there was no private bidder on it. Regardless, plaintiff fails to consider the language that requires that its purchase must have been made "without the knowledge of the security interest and before it is perfected." The bank's interest was perfected on or about March 18, 1975, the date on which it recorded its interest on the certification of ownership with the Department of Motor Vehicles. Plaintiff's lien did not arise until after the mobile home was affixed to the realty on or about April 16, 1975.
Accordingly, plaintiff's lien is not prior to the bank's and plaintiff's motion for summary judgment on this issue is denied.
NOTES
[1] This court is aware of the actions of the Legislature in response to the many questions raised by the decision in Koester, supra. Effective February 4, 1980, the New Jersey Legislature enacted Senate Bill 3294 which effected a moratorium on the taxation of mobile homes as real property. The bill was intended as an interim measure pending adoption of comprehensive mobile home tax legislation. Senate Bill 3294 was repealed and replaced by Assembly Bill 2098 which further extended the moratorium for an additional year.

The recently enacted bills provide, in pertinent part, that mobile homes that were not assessed prior to and on March 20, 1979 (the date of the Koester decision) shall not be assessed and taxed as real property until October 1, 1981 for the tax year 1982. Mobile homes assessed and taxed as real property prior to and on March 20, 1979 for which no appeal has been taken on the imposition of a real property tax as of said date, shall be assessed and taxed as real property. It is clear that in the present action the real property taxes were assessed prior to March 20, 1979 and thus the moratorium imposed by the Legislature has no effect here.