LARIO, J.T.C.
Plaintiffs have appealed from a judgment of the Atlantic County Board of Taxation affirming the municipality’s levying of an omitted assessment, as real property, on billboards located on premises identified as Block 1204.01, Lot 7.02 on the tax map of Galloway Township.
Plaintiffs have now filed a motion for summary judgment seeking a declaration that the billboards are not taxable as real property. The municipality has filed a reply in opposition to plaintiffs’ motion and a cross-motion for summary judgment seeking a ruling that billboards are taxable locally as real property and dismissing plaintiffs’ appeal. The sole issue presented by these motions is the taxability of the billboards as real property; the quantum of the assessment is not in dispute.
*522 It appears that the omitted assessment in this case was instigated by an opinion issued to tax assessors by the Attorney General of New Jersey on behalf of the Director, Division of Taxation, declaring that billboards are taxable by municipalities as real property. By reason thereof, the Outdoor Advertising Association of New Jersey was granted leave to appear as amicus curiae and the Director, Division of Taxation, was permitted to intervene for the sole purpose of opposing the application for tax exemption and joining in defendant’s cross-motion for summary judgment.
The land in issue is owned by Scola, Inc. and a portion thereof is leased to The R.C. Maxwell Company (Maxwell) which has erected thereon four wooden billboards that display outdoor advertising. In their verification, plaintiffs described the billboards substantially as follows:
The billboards which are the subject of the assessments are mainly comprised of wooden structures. They are assembled using the A-frame construction methodology. Wood is the primary basic component of these billboards which typically have 12 feet by 25 feet, or 14 feet by 48 feet, faces. There are also metal components such as bolts and nails. The A-frame structure supports a sign face which is made of either wood panels or sheet metal on a wood frame.
The A-frame apparatus of a billboard with a 14' x 48' face is comprised of the following:
A. Seven main uprights 4" x 6" x 30' of cedar or treated timbers
B. Seven anchors 4" x 6" x 10' of cedar or treated timbers
C. Seven downbraces 2" x 6" x 30' of spruce lumber
D. Platform (350 lineal feet) 2" x 8" of spruce lumber
E. Crossbracing (275 lineal feet) 2" x 6" of spruce lumber
F. Stringers (232 lineal feet) 2" x 6" of spruce lumber
*523 G. Sign face 12 4' x 14' medium density overlay wooden sections or sheet metal sections on a wood frame
The components of a billboard with a 12 foot x 25 foot face are the same, except they are smaller and fewer in number.
Once a sign location is laid out, the billboard is constructed on site. For the 14 foot x 48 foot-face sign, seven 4 inch by 6 inch uprights are installed to a depth of six feet. The area is backfilled and tamped down. Seven anchors are likewise installed about 12 to 15 feet behind the uprights. Downbracing is then erected and bolted to the anchors at the top of the uprights. The stringers are then attached horizontally to the uprights and, lastly, the face is attached to the stringers.
The backbraces are bolted to the uprights and anchors at both ends of the structure. Likewise, the platform bracing is also bolted. The stringers are nailed to the uprights. The other components are nailed to each other with galvanized nails. The galvanized nail used in this fashion makes it work much like a wood screw. This construction technique is faster and cheaper but nearly as effective as if the lumber had been screwed together.
The uprights, because in direct contact with the earth and subject to accelerated decay, must be replaced about every ten years. The entire structure would be replaced within eight to ten years on average, assuming there has been a lease renewal.
The sign face carries the advertising copy. A face made of wood panels is attached to the stringers by use of the galvanized nails which are crimped. The crimping provides strength to the jointed parts. A sheet-metal face is mounted on a frame which is then attached to the stringer. For sheet-metal faces, the advertising copy is placed on sheets of paper which is applied to the sign face up to six layers. For the wooden faces, the advertising copy is painted-on either at the location or at Maxwell’s shops in Atlantic City or Trenton. In the latter case, the wooden panels containing the old copy are removed and replaced with other *524 wooden panels containing the new copy. The replaced panels are either taken to another location or returned to one of the shops for application of new advertising- copy. Painting at the shops is more prevalent in the winter months.
A number of the assessed billboards are illuminated. Illuminated billboards have the following additional items:
1. One hundred amp service panel with timer clock;
2. Six quartz or fluorescent fixtures;
3. A maximum of one hundred ten lineal feet of rigid pipe;
4. A service entrance cable; and,
5. A ground rod.
The service panel and light fixtures are attached to the bottom of the billboard. The rigid pipe within which the service cable is located is attached to the billboard and runs to the electrical service. The ground rod is affixed to the ground and connected by wire to the billboard.
Maxwell further alleges that approximately 85 per cent of its billboard signs are made of wood. There is a constant need for new or recycled parts. Maxwell has an on-going maintenance program for all of its locations, including its wooden signs. The component parts are replaced when damaged by the elements or rotted out. Subject to the environmental conditions of each site, a wood component is generally in need of replacement about eight to ten years after installation. Regardless of whether the billboard has a 12 foot by 25 foot or 14 foot by 48 foot advertising surface, wood components in good condition are largely salvageable. The components permitting illumination are nearly all salvageable. As for the lumber components, the main uprights, anchors and sign faces can be reused in their entirety, if still sound. Approximately 80% of the .downbracing, platform, crossbracing and stringers are likewise salvageable and reusable, if sound.
Maxwell also claims in the event an advertising location is lost, it salvages the component parts of the location unless they are beyond their useful life and these salvaged parts are reused at another existing or new location.
*525 The billboards are taken apart as follows. The light fixtures are disassembled first. The face is then removed and the individual components follow in the reverse order of the assembly process. The nails and bolts are removed. The nails are lifted out with a hammer. The bolts and nuts are separated. While all of these items are discarded, Maxwell claims the wood members are retained and re-used except for damaged or rotted portions which are cut off and discarded.
It is alleged by Maxwell that the typical period for the term of occupancy under these type of leases is from one year to 11 years and that the subject billboards are located on Scola’s land pursuant to two-year leases. The exact descriptions and ages of the billboards under appeal were not definitely established. It was represented by Maxwell that its billboards are generally all similar to the aforestated factual description. For the purpose of its cross-motion for summary judgment defendant accepts as true the facts alleged by plaintiffs; however, for the purpose of plaintiffs’ motion, defendant contends that genuine issues of material fact exist, therefore, plaintiffs’ motion for summary judgment is not ripe. In the event defendant’s motion for summary judgment is denied, it reserves the right to pursue discovery to “fill in the gaps in plaintiffs factual allegations” such as the exact descriptions of the four billboards under appeal, their exact ages, equipment, repairs, etc. However, it was represented at oral argument that the subject billboards were constructed in the late 1950’s or early 1960’s.[1]
Plaintiffs allege that the billboards are exempt from taxation as real property pursuant to subsection (a) and (b) of N.J.S.A. 54:4-1 which provides in pertinent part:
*526 Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless
a. (1) The personal property so affixed can be removed or severed without material injury to the real property;
(2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and
(3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or
b. The personal property so affixed is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property.
Plaintiffs urge that a billboard is personal property which can be removed without material injury to either the real property to which it is affixed or to the billboard itself, and that the intent of the lessor and lessee, as expressed by the lease and understood within the billboard industry, is that billboards are ordinarily not intended to be affixed permanently to real property. They further urge that a billboard is apparatus or equipment used in business and is neither a structure or equipment, the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house property.
Defendant denies that a billboard can be removed without material injury to itself and claims that billboards are not exempt as taxable real property, under subsection (a), essentially because “they are intended to be affixed permanently,” and they are not exempt, pursuant to subsection (b), because they do not constitute machinery, apparatus or equipment as set forth in that subsection and also bécause they are structures which support property.
Plaintiffs further allege that billboards in New Jersey for many years have been taxed as business personal property and not as real property, and to now reclassify them without specific legislation is unlawful. I find this argument to be without merit; billboards are either taxable or non-taxable as real property pursuant to existing New Jersey law.
Pursuant to N.J.S.A 54:4-1, swpra, “all property, real and personal ... not expressly exempted from taxation ... shall be *527 subject to taxation annually under this chapter---- Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property ... unless [excepted by subsection (a) and (b) ].” The words “improvements thereon” as used in the statute are not defined. As used in real estate tax matters, however, they refer to “real property” as distinguished from “personal property.” See Koester v. Hunterdon Co. Bd. of Taxation, 79 N.J. 381, 392, 399 A.2d 656 (1979) (“Mobile” homes affixed to land “constitute land improvements taxable as real property”); N.Y.T. Cable T.V. v. Audubon Borough, 9 N.J.Tax 359, 372 (Tax 1987), aff'd, 230 N.J.Super. 530, 553 A.2d 1368 (1989) (a cable TV tower “is not ‘personal property used in business ... but instead, is taxable as an improvement to real property pursuant to N.J.S.A 54:4-1.’ ”). “Improvements” is defined as “buildings or other relatively permanent structures or developments located on, or attached to land.” The Appraisal Institute, The Dictionary of Real Estate Appraisal 177 (3rd ed. 1993).
Billboards are not expressly exempted from taxation within our real estate tax laws. Therefore, if billboards are improvements to the land they are taxable annually as real estate; however, even if they are personal property, since they are affixed to the land, they are nevertheless taxable as real property unless they come within the exceptions provided by either subsection (a) or (b). Accordingly, in order to ascertain whether subsection (a) or (b) is applicable, as contended by plaintiffs, it must first be determined that the billboards are not “improvements” to the land but instead, are “personal property” affixed to the land.
To resolve this issue the first question raised is: When lumber and metal components are assembled on site with the uprights installed to a depth of six feet and the result maintained as hereinabove described, is the result an “improvement to real estate” or “personal property affixed to the land”? Based upon my findings hereinafter set forth, I am of the opinion that the resulting property constructed constitutes an “improvement thereon” and not personal property affixed to the real property. Koes *528 ter v. Hunterdon Co. Bd. of Taxation, supra; N.Y.T. Cable T.V. v. Audubon Borough, supra; Bell v. City of Corbin City, 164 N.J.Super. 21, 395 A.2d 546 (1978). However, since this issue was not raised, briefed or argued by the parties and by reason of my final conclusion this issue will not be finally determined herein.
Initially, the court will address plaintiffs’ claim of exception under subsection (b) whereby plaintiffs allege that a billboard is “apparatus or equipment” used in business and is not a structure as described therein. I conclude that billboards are not entitled to the exception under the provisions of subsection (b) because they do not fall within the definition of “apparatus or equipment” and even if they did, they would not be excepted under this section because a billboard is a “structure.”
N.J.S.A 54:4-1.15 provides: “ ‘Machinery, apparatus or equipment’ means any machine, device, mechanism, instrument, tool, tank, or item of tangible personal property, used or held for use in business.” In Panta Astor, Inc. v. Dir. Div. of Taxation, 8 N.J.Tax 464 (Tax 1986), Judge Hopkins considered the meaning of “machinery, apparatus and equipment” as used in N.J.S.A. 54:32B-8.13, an exemption statute within the Sales and Use Tax Act, N.J.S.A 54:32B-1 et seq. After setting forth their definitions as contained in Webster’s New Collegiate Dictionary (1979) he stated that the “definitions show that ‘machinery’ includes the working parts of a machine, ‘equipment’ includes the ‘implements’ used in an operation and ‘apparatus’ is considered a synonymous cross-reference to equipment.” 8 N.J.Tax at 473. See also Taylor v. Lower Township, 13 N.J.Tax 371 (Tax 1993) in which Judge Rimm also had occasion to define these words as used in N.J.S.A. 54:4-1.15. He accepted Judge Hopkins’ interpretation and added the definition contained in Webster’s Third International Dictionary of English Language (Unabridged ed. 1986):
Machinery is defined as follows:
1: Machines as a functioning unit: as ... b(l): the constituent parts of a machine or instrument: ... 2a: the means and appliances by which something is kept in action or a desired result is obtained ...
Apparatus is defined as follows:
*529 ... 2a: a collection or set of materials, instruments, appliances, or machinery designed for a particular use ... b: any compound instrument or appliance designed for a specific mechanical or ehemical action or operation: ... Equipment is defined as:
... 2a: the physical resources serving to equip a person or a thing ... as (1): the implements (as machinery or tools) used in an operation or activity: ____[at-]
In both Panta Astor, Inc. and Taylor, it was held that, pursuant to statutory construction, these words should be given their ordinary and primary meaning. By using this construction and applying the above-stated definitions to “machinery, apparatus and equipment” as used in subsection (b), I find and conclude that billboards are not included therein.
Nevertheless, even if a billboard were determined to be “machinery, apparatus or equipment,” it would not be excepted from taxation as real property pursuant to subsection (b) because a billboard is a “structure.” N.J.S.A. 54:4-1.15 defines a structure as “any assemblage of building or construction materials fixed in place for the primary purpose of supporting ... property.” I find that a billboard is an assemblage of building materials fixed in place for the primary purpose of supporting the sign faces which have applied thereto the advertising copy, and that sign faces are property. Billboards, therefore, are structures expressly excluded from the exception granted personal property from real property taxation pursuant to subsection (b).
It is also noted that subsection (b) as presently revised is derived from the Business Retention Act, L. 1992, c. 24, adopted June 26, 1992. As the name of the act implies, it is intended to retain businesses in New Jersey which might otherwise relocate outside this State if machinery, apparatus or equipment used in business were taxed as real property, thereby diminishing their ability to compete with businesses located outside the State and not similarly taxed.[2] Billboards with advertising copy aimed at *530 New Jersey motorists are not in direct competition for advertisers with billboards located along highways of foreign states. I conclude ft was not the intention of our Legislature by the adoption of subsection (b) to include billboards within the exception afforded thereby.
Next to be addressed is plaintiffs’ claim that billboards are excepted from taxation pursuant to subsection (a). Under this alternative-exception section, since the three separate tests set forth therein are in the conjunctive, all three conditions must be met if the personal property is not to be taxed as real property. Maxwell alleges that a billboard is an impermanent structure [3], not affixed to the ground and, by the nature of its design, can be easily disassembled without material injury to the land or to itself. Plaintiffs further contend that the parties’ intent is that the billboard is not intended to be affixed permanently to the property, as evidenced by the two-year lease agreement entered into between the landowner and Maxwell, whereby Maxwell maintains the right to remove the billboard.
Initially, Maxwell’s claim that a billboard is not affixed to the land is not correct. It has averred that seven four inch by six inch uprights are installed in the ground to a depth of six feet; that the area is backfilled and tamped down; that seven anchors are likewise installed 12 to 15 feet behind the uprights and the ground rod for electricity is also affixed to the land. Accordingly, I find that the billboard is affixed to the land.
Upon dismantling and removal of the billboard I conclude that there results no material injury to the real property; however, I find to the contrary relative to the billboard itself. As described by Maxwell, the galvanized nails, which work much like wood screws, are lifted out with a hammer and the nuts and bolts are *531 separated. It is noted that the galvanized nails, when installed, have been crimped for strength. A crimped nail is one which is longer than the lumber through which it has been hammered causing a portion of the front end to protrude and the protruded portion is bent and flattened into the opposite end of the lumber.
Obviously by lifting out crimped nails with a hammer, damage ordinarily will occur to the wood. Also “while all of these items are discarded, the wood members are retained and reused, except for damaged or rotted portions which are cut off and wasted.” It was previously described that “the uprights are in direct contact with the earth and are subject to accelerated decay” and “there is a constant need for new or recycled parts to replace component parts damaged by the elements or rotted out” and that “the entire structure would be replaced within eight to ten years.”
From this description of a billboard’s breakdown, it is obvious that it is practically impossible to disassemble a billboard without material injury to the billboard. After a billboard has been disassembled, all that remains are pieces of lumber, most of which are destroyed or discarded, plus other component parts; the resultant pile of wood, etc., is no longer a billboard. Maxwell claims that “approximately 80 percent of the downbracing, platform, erossbracing and stringers are likewise salvageable and reusable, if sound,” however, it does not allege that the 80% is reused in a single replacement; and, even if it did, the result would be a rebuilt billboard.
There is no proof, and considering plaintiffs’ stipulation that a wooden component part is generally in need of replacement within eight to ten years of installation, the court finds it impractical, that a billboard is ever completely reassembled piece by piece thereby restoring it to its original construction. I find that when dismantled, a billboard is not “removed or severed without material injury to the personal property itself,” therefore, the second prong of subsection (a) is not met.
I further find and conclude that the third prong of subsection (a) also is not met by plaintiff. Under this prong plaintiffs have *532 the burden to establish that the billboards are “not ordinarily intended to be affixed permanently” to the real property.
Plaintiffs claim that the following reasons lead to the conclusion that billboards are ordinarily not intended to be affixed permanently: (1) the lease is for a period of only two years; (2) the lessee has the right to remove them, therefore, it is acknowledged they are not owned by the owner of the land; (3) the structure is easily assembled and torn down; (4) a billboard is an impermanent structure, constructed mainly of wood components which have a useful life span of about eight to ten years and are frequently replaced; and, (5) within the industry they are ordinarily considered not to be permanent.
Conversely, defendant disagrees with plaintiffs’ conclusion and instead alleges that the billboards are ordinarily intended to be affixed permanently to the ground on which they are erected, emphasising that billboards are ordinarily erected for their useful lives, ie., until they are economically obsolete or have physically deteriorated.
Therefore, to be determined under this prong is what is “ordinarily intended” in the case of wooden billboards. In Chevron, U.S.A., Inc. v. Perth Amboy, 9 N.J.Tax 205 (Tax 1987), this court, sitting pursuant to R. 8:8-6, held that the physical facts or the reasonably manifested outward appearances are the relevant considerations in ascertaining ordinary intent. Id. at 243. The correct standard applicable to determine whether property is intended to be affixed permanently to real property is an objective standard rather than what was subjectively intended. N.Y.T. Cable T.V. v. Audubon Boro., supra, 230 N.J.Super. at 534, 553 A.2d 1368. “The intention in the placement of the structure on the land is the dominant factor to be considered in making the determination of its character.” Bell v. City of Corbin City, supra, 164 N.J.Super. at 26, 395 A.2d 546. Where the intention was that the property remain on the land until its use is no longer feasible, it is proper to infer that the property is intended to be affixed permanently to the land, N.Y.T. Cable, supra, 9 N.J.Tax at 309. The fact that the owner of the property has only a *533 leasehold interest therein and is obliged to remove the property is not controlling, Koester, supra, 79 N.J. at 292-93, 399 A.2d 656; N.Y.T. Cable, supra, 9 N.J.Tax at 368-69, nor is the fact that they can be removed. Id. at 369.
In the instant case the billboards in question have been fixed at their present locations since the late 1950’s or early 1960’s. Although the original two-year term of the lease has obviously long expired and has been repeatedly renewed, there does not appear to be any outward objective intention to remove the billboards. Additionally, assuming, as implied by plaintiffs’ counsel, the current existence of building code prohibitions of wooden billboards presently in effect in many municipalities, it is doubtful that the owner desires to, or legally may, move the billboards to another location.
I find that wooden billboards, by virtue of their design, material and construction do not easily lend themselves to being broken down and reassembled elsewhere. There has been no proof that such has been the fact. I find that billboards are ordinarily maintained and retained where originally constructed for the duration of their economic or useful life and that that practice indicates an intent for billboards to be permanently affixed to the land.
I further find as a fact from the total evidence presented by plaintiffs that the billboards in question are ordinarily intended to be affixed permanently to the real property to which they are attached and I conclude that they are not entitled to be excepted from taxation as real property as granted by N.J.S.A. 54:4-l(a) or (b).
Plaintiffs’ motion for summary judgment is denied and defendant’s motion for summary judgment dismissing plaintiffs’ complaint is granted.

This representation was based upon plaintiff-counsel's assumption that by reason of various building codes in most municipalities and the State of New Jersey that no longer permit the erection of these type of wooden billboards, their installation probably occurred prior to the adoption of these restrictive codes, most of which became effective in the late 1950’s or early 1960's.

 “The Legislature further finds that, in order to retain manufacturing jobs, it is in the interest of the business community, municipalities and the State of New Jersey to maintain a policy regarding the taxation of business personal properly which is historically consistent, equitable and competitive with neighboring *530 states and which creates and maintains reasonable incentives for manufacturing interests to exist and thrive in New Jersey." N.J.S.A. 54:4-1.14.

 It is noted that Maxwell’s description and plaintiffs' brief refer to a billboard as a "structure."