141 N.J. Super. 301 (1976)
358 A.2d 203
WESTINGHOUSE BROADCASTING COMPANY, INC., PETITIONER-APPELLANT,
v.
DIRECTOR, DIVISION OF TAXATION, RESPONDENT-RESPONDENT. WESTINGHOUSE BROADCASTING COMPANY, INC., PETITIONER-APPELLANT,
v.
TOWNSHIP OF LYNDHURST, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1976.
Decided April 30, 1976.
*302 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. John Lifland argued the cause for appellant (Messrs. Stryker, Tams & Dill, attorneys; Mr. Burtis W. Horner, of counsel; Mr. Robert L. Hollingshead, on the brief).
Mr. Peter D. Pizzuto, Deputy Attorney General, argued the cause for respondent and cross-appellant Director, Division of Taxation (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. Gabriel Ambrosio argued the cause for respondent Township of Lyndhurst (Mr. Ralph A. Polito, attorney).
PER CURIAM.
These two consolidated appeals require us to determine whether four radio broadcasting towers erected on land owned by petitioner Westinghouse Broadcasting Co., Inc., constitute real property so as to be subject to taxation by the municipality, N.J.S.A. 54:4-1 et seq., or whether *303 they constitute "personal property used in business" so as to be taxable by the State under the Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq. The appeals reach this court by diverse routes.
Petitioner owns land in the Township of Lyndhurst on which are located the four transmitting towers in question and a small building which is connected to the towers by a cable and houses equipment used to broadcast over the towers in conjunction with petitioner's operation of radio station WINS. The municipality assessed the land for the year 1968 a total of $247,100, allocated as follows: land  $128,700; improvements  $118,400.
Petitioner appealed the assessment to the Bergen County Board of Taxation, which affirmed. A further appeal was taken to the Division of Tax Appeals, where petitioner did not challenge the land assessment but argued that the transmitting towers were personal property so that the assessment for improvements should be limited to $18,400, which it contended was the value of the small building located on the land. The Division of Tax Appeals agreed the towers should be treated as real estate but lowered the assessment of the transmitting towers from $100,000 to $60,000. Petitioner's appeal to this court followed.
The second appeal had its inception when the State assessed the towers as personal property for the year 1968. Petitioner paid the taxes thus assessed and filed a formal claim for refund to preserve its right to a refund should it be determined, contrary to its basic contention, that the towers were subject to taxation as real property. That claim for a refund was denied when the Director of the State Division of Taxation concluded that the towers were properly classified as personal property used in a business, pursuant to N.J.S.A. 54:11A-2. Petitioner appealed to the Division of Taxation which ruled, as it had in the prior appeal, that the towers were real property and directed a refund of the tax paid.
*304 Even though it had been successful in the Division of Tax Appeals in that proceeding, petitioner filed a notice of appeal to this court. A cross-appeal was filed by the State of New Jersey, which sought to retain the personal property tax paid.
The radio transmitting towers in question (four in number) are approximately 200 feet high. They are made of steel angle irons which are fastened together with nuts and bolts and each tower, in turn, is bolted to four concrete pier foundations, each topped by a steel plate. The four foundations are each eight feet high and set on pilings estimated to be ten feet deep in the ground. The life of the towers is indefinite if properly maintained. They may be readily dismantled by removing the bolts which hold them together, transported to another location and reassembled. There exists a limited market for resale of such towers in that they are advertised in trade publications and are occasionally bought and sold, but whether it is economically feasible to do so was the subject of disputed testimony and involved considerations of the costs of labor and transportation. The towers in question have been in place and used since the late 1920s or early 1930s.
The Business Personal Property Tax Act provides that "[a]ll personal property used in business in this State not expressly exempted from taxation or expressly excluded from the operation of this act shall be subject to taxation annually under this act." N.J.S.A. 54:11A-3.[1]
N.J.S.A. 54:11A-2 provides:
For the purposes of this act, unless the context otherwise requires:

* * * * * * * *
(b) "Personal property used in business" shall mean tangible goods and chattels used or held for use in any business, transaction, activity or occupation conducted for profit, but shall not include:

*305 * * * * * * * *
(2) goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto;

* * * * * * * *
Various tests have been established to determine when a movable chattel loses its character as personalty and becomes a fixture and, thus, part of the realty. They were restated in the case of National Lead Co. v. Sayreville, 132 N.J. Super. 30 (App. Div. 1975), following Fahmie v. Nyman, 70 N.J. Super. 313, 316-317 (App. Div. 1961), as follows:
They are when it is: (1) actually affixed to the realty or something appurtenant thereto, (2) appropriated to the use or purpose of that part of the realty with which it is annexed, and (3) intended by the party making the annexation to be a permanent accession to the freehold. [132 N.J. Super. at 38-39]
The modern view is that the intention in the placement of the structure on the land is the dominant factor to be considered in making the determination of its character. Fahmie v. Nyman, supra 70 N.J. Super. at 317.
An "institutional doctrine" has been applied in some cases to reach the conclusion that the removal of a chattel will do material injury to the realty if its removal "will prevent the structure from being used for the purpose for which it was erected or for which it has been adapted." Smyth Sales Corp. v. Norfolk B. & L. Ass'n, 116 N.J.L. 293, 298 (E. & A. 1935) (an oil burner tank and pump in a four-family house); National Lead Co. v. Sayreville, supra; Fahmie v. Nyman, supra, 70 N.J. Super. at 318-319.
These principles were reviewed and accepted in National Lead Co. v. Sayreville, supra, where the court said:
As for the matter of severability or removability without "material injury" to the realty, it should be noted that a similar term, appearing in the Uniform Conditional Sales Law, N.J.S.A. 46:32-14 (since repealed and superseded by the Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq.), has been defined to mean the severance of a chattel affixed to and forming part of the realty *306 which "will prevent the structure from being used for the purpose for which it was erected or for which it has been adapted." [Citations omitted.] This is the so-called doctrine of fixtures:
"Basically, the applicability of the rule depends upon the presence of proof in the individual case which impels the conclusion that the chattels in question are permanently essential to the completeness of the structure or the use to which the structure is put. This established, mode of annexation fades in significance, adaptability inheres in the proofs, and the intention of permanent accession to the freehold is inferred. [Fahmie v. Nyman, supra [70 N.J. Super. at 318-319.]
We perceive no sound reason for fashioning different principles to be applied to machinery and equipment used in a manufacturing process. * * * Where such articles, though useful and even essential for the business carried on, are not permanently affixed to the ground or building or need no adaptation thereto, and can easily be removed and used elsewhere without material injury to the building or the articles themselves, they retain their character as personal property. [Citations omitted.] On the other hand, whenever machinery and equipment have been placed in or annexed to a structure to carry out the purposes for which the structure was erected or designed or to which it has been adapted, with the intention to remain there permanently, and the removal thereof will result in material injury as defined hereinabove, such machinery and equipment become part of the realty. The test here is the essentially of the chattels to the use for which the building was designed or used. [Citations omitted.] [132 N.J. Super. at 39-40]
Petitioner emphasizes the testimony indicating that the towers can be disassembled and removed and claims support in the National Lead Co. case for the conclusion that the towers are personalty. We do not agree that the principles of National Lead Co. require this conclusion. Moreover, the property there, consisting of a large operating industrial complex comprised of many buildings and numerous items of equipment, all involved and used in a continuous process operation, is distinguishable from the property in the case at hand. We are here concerned with structures erected on the land and affixed to concrete foundations; we are not concerned with machinery contained in a structure which may be replaced or removed. The fact that the towers could be unbolted, disassembled and removed is not controlling. Speiden v. Parker, 46 N.J. Eq. 292 (E. & A. 1889); Feder *307 v. Van Winkle, 53 N.J. Eq. 370 (E. & A. 1895). Virtually all property can be removed from land without materially damaging the land itself.
In Speiden v. Parker, supra, boilers, engines, hoisting gears, derricks, and a steam pump, with pipes, valves and pulleys, located near a quarry, plus railroad track and a dock used for transferring stone to boats, were held to be fixtures. The court stated that the apparatus was "fastened to the ground," used for the only purpose "to which the real estate was put," and attached "with the intention that it should remain there till it was worn out in a business which was likely to consume it utterly." Id. 40 N.J. Eq. at 293.
The court in Feder v. Van Winkle said:
There must be actual annexation with an intention to make a permanent accession to the freehold, but it is not necessary that there be an intention to make the annexation perpetual. A test so severe would be impracticable in its application.
The intention must exist to incorporate the chattels with the real estate for the uses to which the real estate is appropriated, and there must be the presence of such facts and circumstances as do not lead to but repel the inference that it is intended to be a temporary annexation. [53 N.J. Eq. at 373]
The case of Standard Oil etc., v. Atlantic City, 18 N.J. Misc. 582, 15 A.2d 271 (St. Bd. Tax App. 1940), involved a determination of the character of large oil tanks with auxiliary piping, intended for storing oils, kerosenes and fuels, as personalty or realty. The test there was stated to be:
The question as to whether or not a structure constitutes an improvement of the ground, so as to partake of the status of realty, depends upon the degree of permanence intended in its erection and use * * * *. [at 583]
The towers herein are structures which have been attached directly to the land and are improvements thereto. The fact that structures, whether enclosed or not, can be removed and the land restored to its original condition does not determine *308 their taxable status. Here the towers were fixed with the intention that they should remain permanently in place so long as they can be used by petitioner or others for radio broadcasting. Their presence has adapted the land to a functional use; they have determined the character and purpose to which the land has been dedicated. They are substantial structures in existence for more than 40 years. As such they are part of the realty and are not "goods and chattels * * * [which are] severable or removable without material injury" to the property, within the meaning of N.J.S.A. 54:11A-2.
The determination of the Division of Tax Appeals in both cases, holding that the towers are part of the realty and thus taxable by the municipality should be:
Affirmed.
NOTES
[1] By enactment of this statute the State preempted the taxation of business personal property. National Lead Co. v. Sayreville, 132 N.J. Super. 30, 38 (App. Div. 1975).