LARIO, J. T. C.
Plaintiff H. J. Bradley, Inc., a corporation engaged in the sale and installation of above-ground swimming pools, has appealed an assessment for New Jersey Sales Tax levied by the Director, Division of Taxation, on the charges made for installation of the pools. The amount of the base tax assessed was $18,121.20 plus a penalty of $906.09, together with interest accumulating thereon for the period between September 3, 1974 and June 30, 1976.
The issue is whether the service involved the mere installation of tangible personal property, which is taxable, or rather constituted the construction of a capital improvement, which is exempt. N.J.S.A. 54:32B-3(b)(2)(v).
The only testimony offered on plaintiff’s behalf was by its president and by one William Balentine whose company installed pools for plaintiff during the period in question. Their testimony went to the manufacturer’s recommended method and general instructions for the installation of three models of pools handled by plaintiff; these models are designated the Leisure Mate, the Ocean Mate and the Swim Mate. At no time did either witness testify as to the facts surrounding the installation of any particular pool. Since the court was sitting without a jury, this testimony was, over objections by defendant, accepted by the court as background information only, and not as evidence of the mode of installation of any specific pool, with the exception of a small portion of Balentine’s testimony relating to the actual disassembly of one unidentified pool.
*216 The testimony offered can be summarized as follows. Plaintiff sold the aforementioned three models of above-ground pools, which are manufactured by Coleco Industries, Inc. Cost to the customer is $3,500-$4,000. The Leisure Mate and Ocean Mate pools have a 24-foot diameter swimming area; the Swim Mate has a 21-foot diameter swimming area. All three pools are four feet in depth. Attached to each pool at rim level are aluminum decks of various sizes. Where necessary, plaintiff arranges 84-month bank financing for its customers. These loans are usually secured by second mortgages on the customers’ houses. The pools are installed by three-man crews made up of employees of independent contractors over a period of two to four days. After the purchase and delivery of the pool, the first step in installation is leveling of the ground at the site. The ground on which the pool is to rest is excavated to a depth of 12 to 18 inches, depending upon the peculiar topography of the land, and a sand base three to five inches deep is poured into the excavated area. A base ring is then set down into which the 48-inch high, vinyl-laminated steel wall is inserted and bolted. Some hand riveting is also done. Supports resting on concrete blocks are braced against the outside of the wall. A metal deck is then attached, the supports of which are cemented into the ground. A walk-deck and 2y2-foot-high fence are installed around a portion of the pool’s circumference, and a 20-gauge vinyl liner is installed, with holes cut for an in-wall skimmer (intake) and a water-return nozzle. Filter, pump and hoses are hooked up for filtration purposes. The pool is then ready to be filled with water. A ten-year warranty is given to the customer. Disassembling the pool would damage the liner and void the warranty.
As to disassembly of a pool, Balentine testified that rivets had to be drilled out, ruining the metal posts in which they were inbedded. Supports set into concrete had to be sawed off and concrete dug out. Certain molding pieces also had to be replaced. The liner would normally be ruined and would have to be replaced if the pool were to be reassembled.
*217 At the conclusion of testimony defendant made a motion for judgment in its favor under R. 4:40-1 on the ground that insufficient evidence had been introduced as to the construction of any particular pool, and with regard to any owner’s intention as to the permanency of any particular pool, to even reach the issue of whether any pool constituted a capital improvement. This court reserved decision on the motion under R. 4:40-2(a). For reasons set forth below, the motion is granted.
A sales tax is imposed by N.J.S.A. 54:32B-3(b)(2) upon charges for the installation of tangible personal property. An exception is contained in the same section, however, for “services rendered in installing property, which, when installed, will constitute an addition or capital improvement to real property, property or land.” Plaintiff contends that the pools installed by it during the period in question constitute capital improvements within the meaning of this exception, therefore, it is not liable as a collection agent under N.J.S.A. 54:32B-14(a) for sales tax on the charges made for installing such pools. The issue is whether the pools, which were clearly personalty prior to installation, became capital improvements when annexed to the ground upon which they were installed.
In Handler v. Horns, 2 N.J. 18, 65 A.2d 523 (1949), our Supreme Court noted:
It is an ancient maxim, which in the language of antiquity is expressed quicquid plantalue solo, solo eedit, that whatsoever is fixed to the realty is thereby made a part of the realty to which it adheres, and partakes of all of its incidents and properties. 36 C.J.S. (Fixtures), § 1, p. 889; Bank of America Nat. Ass’n v. La Reine Hotel Corp., 108 N.J.Eq. 567, 571 [156 A. 28] (Ch.1931). But through the advancing years that old maxim has given way to numerous exceptions.
The personalty/realty distinction is analogous to the chattel/fixture dichotomy which is so important in the area of security interests. New Jersey courts have long applied a three-pronged test to determine when chattels become fixtures. This test was first set forth by a New Jersey court in Feder v. Van Winkle, 53 N.J.Eq. 370, 33 A. 399 (E. & A. 1895). The issue was whether certain machinery constituted fixtures and was thus subject to the lien of a real estate mortgage. The court held that chattels become fixtures when they are (1) actually *218 annexed to the real estate or something appurtenant thereto; (2) applied to the purpose or use of the part of the realty to which they are annexed and (3) annexed with intention to make a permanent accession to the freehold. (At 372, 33 A. 399).
Applying this three-pronged test, the court concluded:
There must be actual annexation with an intention to make a permanent accession to the freehold. ..
The intention must exist to incorporate the chattels with the real estate for the uses to which the real estate is appropriated, and there must be the presence of such facts and circumstances as do not lead to but repel the inference that it is intended to be a temporary annexation, [at 373, 33 A. 399]
The Feder court also held (at 372, 33 A. 399) that “each case must be determined according to its particular facts and circumstances.” Therefore, the court examined the manner in which the various machines were attached to the realty, concluding (at 376, 33 A. 399) that “[t]he machinery employed, the mode of its annexation and manner of its use, in connection with the realty as an entirety, indicated not a temporary but a permanent accession. 53 N.J.Eq. at 376, 33 A. 399.
In a subsequent case, Standard Oil Co. of N. J. v. Atlantic City, 18 N.J.Misc. 582, 15 A.2d 271 (St.Bd. of Tax App.1940), the issue was whether oil storage tanks were taxable as realty. The tanks, which measured from 15' X 30' to 42' X 70', were made of steel, set in concrete bases and firmly affixed to the ground. The court held that the characterization of a structure as realty “depends upon the degree of permanence intended in its erection and use.” 18 N.J.Misc. at 583, 15 A.2d 271. Applying this test, the court concluded that the tanks were “designed and used by the owner as permanent improvements of the freehold, and that for such reasons they were properly assessed by the respondent taxing district as improvements (to the realty).” 18 N.J.Misc. at 584,15 A.2d 271. Piping affixed to the tanks was also held to be taxable as realty.
As between landlord and tenant intention has been given special emphasis,
... the presumption being that the tenant’s motive in placing fixtures on the demised premises is for his own benefit, not to enhance his landlord’s realty, and this is so even though the lease is silent on the subject. Particularly is this true *219 where the personalty is annexed or appropriated to the demised premises for the purpose of carrying on a trade or business for profit thereon. [Citations omitted] It is also considered sound public policy to allow the tenant the greatest latitude to remove fixtures to encourage trade and industry. [Citations omitted] These considerations have led the courts to place special emphasis upon the element of intention as to the ownership of fixtures where the claimants are landlord and tenant. [Citation omitted]. [Handler v. Horns, supra, 2 N.J. at 24, 65 A.2d 523]
Intent was also held to be the dominant issue in Fahmie v, Nyman, 70 N.J.Super. 313, 175 A.2d 438 (App.Div.1961). There an action was brought to replevy certain equipment used in a butcher business, including a checkout booth, food display cases, walk-in refrigerators and shelving. The issue was thus whether these items were personalty or fixtures passing with the realty. The court held that the three-prong test set forth in Feder, supra, is the applicable standard, but that the dominant factor is intent of the owner (the third prong). Intent is inferred from the circumstances. “The controlling intention is that deduced by the law from the proved facts and circumstances, including the relation, conduct and language of the parties, as distinguished from the unrevealed, secret intention of the annexor.” Id. at 317,175 A.2d 438. A simple mode of attachment indicates a lack of intent to permanently affix, whereas the fact that physical damage would be caused by removal argues in favor of intent to make a permanent annexation to the real estate. See id. at 318, 175 A.2d 438.
The real property/personalty issue has also arisen in a series of cases dealing with the Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq. See, e.g., Bayonne v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979); Westinghouse Broadcasting Co., Inc. v. Director, 141 N.J.Super. 301, 358 A.2d 203 (App.Div.1976); National Lead Co. v. Sayreville, 132 N.J.Super. 30, 331 A.2d 633 (App.Div.1975). That act provides that: “personal property used in business” shall not include “goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto; ...” N.J.S.A. 54:llA-2(b)(2).
*220 In National Lead, supra, with respect to differentiation between real property and personalty, the court found that the language of the N.J.S.A. 54:llA-2(b)(2) exclusion is “in accord with the common law doctrine of fixtures.” 132 N.J.Super. at 38, 331 A.2d 633. The standard to be applied, then, is the three-prong test enunciated in Fahmie, supra. As to the “material injury” component of the statutory exclusion, the court found that this requirement is met when removal of the chattel would prevent the structure from which it was removed from being used for its intended purpose. 132 N.J.Super. at 39, 331 A.2d 633. This is the “institutional doctrine” of fixtures.
The three-prong fixtures test was also applied in Westinghouse Broadcasting Co., Inc. v. Taxation Div. Director, supra. There the issue was whether four steel, 200' radio broadcasting towers were real property or “personal property used in business” under N.J.S.A. 54:llA-2. Citing Fahmie, the court found that “the intention in the placement of the structure on the land is the dominant factor to be considered in making the determination of its character.” 141 N.J.Super. at 305, 358 A.2d 203. The court concluded that the towers were realty because they were “fixed with the intention that they should remain permanently in place so long as they can be used by petitioner or others for radio broadcasting.” Id. at 308, 358 A.2d 203. [Emphasis supplied].
Prior to our Supreme Court decision in Port Jersey, supra, the rule was that both the three-prong fixtures test and the institutional doctrine version of the.“material injury” test were to be applied in determining whether property was taxable as realty or personalty for purposes of the Business Personal Property Tax Act.[1] However, at least where the subject property was *221 affixed directly to the land, a lack of material injury upon removal of the chattel was not controlling, and the three-prong test alone was applied. Whether the three-prong test was applied alone or in conjunction with the “material injury” test, the dominant element was that of intent to permanently affix. In Port Jersey these standards were altered when the New Jersey Supreme Court rejected the institutional doctrine as set forth in National Lead.
The issue in Port Jersey was whether large cranes were taxable as realty or as personalty under the Business Personal Property Tax Act. The cranes, which were used in loading and unloading ships, moved across the piers on which they were located on railroad-type tracks. Although quite large, the cranes could be readily removed by rolling them onto barges having similar rails fastened to the barge and towed away. The court, in rejecting the “institutional doctrine” which defines “material injury” in terms of functional or economic impairment caused to the property by removal of the chattel, held that the NJ.S.A. 54:llA-2(b)(2) exemption encompasses “only those chattels the removal of which will do irreparable or serious physical injury or damage to the freehold.” 79 N.J. at 378, 399 A.2d 649. Since it was determined the cranes could be easily removed with no material physical injury to the freehold, they were found to be personalty taxable under the Business Personal Property Tax Act.
In construing the NJ.S.A. 54:llA-2(b)(2) business personal property exemption narrowly, the court relied heavily upon the legislative purpose of the Business Personal Property Tax Act, which is to tax business equipment and machinery uniformly at the state level, thus eliminating disparities inherent in local taxation, taxing such property at a generally lower rate, and creating a more attractive fiscal climate for business in New Jersey. 79 N.J. at 378-379, 399 A.2d 649. A broad construction of the business personal property tax exemption would result in more equipment being taxed as real property at the local level, thus partially defeating the above purposes of the Business *222 Personal Property Tax Act. Therefore, our Supreme Court has mandated narrow construction of the exemption.
Our Supreme Court’s opinion in Koester v. Hunterdon Cty. Bd. of Tax., 79 N.J. 381, 399 A.2d 656 (1979), decided the same day as Port Jersey, makes clear, however, that the standard set forth in Port Jersey applies only upon the invocation of the Business Personal Property Tax Act. The Koester case did not involve property which, if not taxable as realty, would be taxable under the terms of the Business Personal Property Tax Act. It focused instead on the taxable status of mobile homes as local real property, an issue previously addressed by several lower New Jersey courts.
Taxability of mobile homes as real property was the issue in Manhattan Trailer Ct. v. North Bergen Tp., 104 N.J.Super. 405, 250 A.2d 156 (App.Div.1969). The mobile homes involved were really no more than trailers. Their owners rented the spaces on which they were situated on a daily, weekly or monthly basis. The homes had no permanent foundations. They were stabilized with blocks or jacks and connected to “plug-in” type utility hook-ups. Installation of a home took only an hour and the wheels were not removed. The court held that the homes were not permanently affixed to realty and thus could not be taxed as real property. Id. at 408, 250 A.2d 156. Because only personalty used in business was taxable, it appeared after Manhattan Trailer that mobile homes were taxable as neither realty nor personalty. See Nelson Cooney & Son, Inc. v. South Harrison Tp., 57 N.J. 384, 273 A.2d 33 (1971).
The result in a subsequent mobile home case was quite different than that in Manhattan Trailer. The owners of the home involved in Bell v. Corbin City, 164 N.J.Super. 21, 395 A.2d 546 (App.Div.1978), were Pennsylvania residents who used the mobile home during weekends and vacations. They owned the land upon which the home rested. It sat on a concrete-pad foundation supported by concrete blocks and was secured to the foundation by chains and anchor bolts set into the concrete. The wheels were removed, skirting was placed around the founda *223 tion and on-site water and septic systems were installed. To detach the home would require a professional mover and take approximately eight hours. Turning to the modified, three-prong fixtures test, the court cited with approval Westinghouse wherein it had previously held that “the intention in the placement of the structure on the land is the dominant factor to be considered in making the determination of its character.” Id. at 25, 395 A.2d 546 (citing 141 N.J.Super. at 305, 358 A.2d 203) (emphasis supplied). Since the owners intention with respect to the mobile home in question was that it remain in place for the “foreseeable future,” the court concluded that “[i]t is therefore taxable as real estate and thus the Bells should share the cost of local government and its services with other taxpayers.” Id. at 27, 395 A.2d 546.
Intent was also found to be the dominant factor in Koester, supra, which dealt with mobile homes similar to the one in Bell in that they were “mobile” only in the sense that they were prefabricated elsewhere and transported to the home sites. Because the mobile homes involved had “all of the conveniences of modern conventional homes,” 79 N.J. at 384, 399 A.2d 656, the court held that “it may readily be inferred that once a mobile home is placed on its site it is intended to and does remain there indefinitely.” Id. at 385, 399 A.2d 656. Therefore, the homes were held taxable as real property.
Several recent decisions of this court have dealt with the question of whether property is realty or personalty for tax purposes. In Bostian v. Franklin State Bank, 1 N.J.Tax 270 (1980), the question was whether vault doors, a tellers’ counter and safe deposit boxes were properly assessed for real property taxation. The court, referring to the business personal property tax exemption contained in N.J.S.A. 54:llA-2(b)(2), held that the phrase “goods and chattels so affixed to real property as to become part thereof” must be construed in terms of the basic, three-prong fixtures test. Using the modern version of this test, the court focused on intent, stating that “intention must be judged by the physical facts or reasonably manifested outward appearances.” Id. at 276 (emphasis supplied).
*224 Applying these principles, the court found that the vault doors and tellers’ counter were part of the realty, while the safe deposit boxes were personalty. The vault doors were held part of the realty because they were functionally and physically integrated with the vault itself, which was part of the realty. The counters, which were affixed to the concrete, were also “functionally and physically integrated with the single-purpose bank building and formed part of the realty.” Id. at 277. The safe deposit boxes were held to be personalty because they were readily removable and not physically attached to the realty. Judge Crabtree concluded that “the Legislature did not intend to abolish the classical fixtures test in classifying property as personalty or realty for tax purposes. . . The recast definition of material injury embodied in the Port Jersey case does not derogate from the three-prong test. ...” Id. at 279.
Though the material injury test appears to have been largely ignored in Bostian, Judge Crabtree made it clear in a subsequent opinion that to qualify for the N.J.S.A. 54:llA-2(b)(2) exemption the property at issue must meet the requirements of both the three-prong fixtures test and the material injury test as it was interpreted in Port Jersey. In Wiesenfeld t/a Carolier Lanes v. Taxation Div. Director, 3 N.J.Tax 3 (Tax Ct. 1981), the issue was whether bowling lanes and equipment were realty or personalty for purposes of the Business Personal Property Tax Act. In determining the character of the property for tax purposes the court applied both the three-prong fixtures test and the “material injury” test. With respect to the latter, the court held that material injury “means that degree of damage to real estate which rendered it non-functional without extensive repair, redesign or replacement of the removed item.” Id. at 14.
This interpretation is consistent with both the language of N.J.S.A. 54:11A — 2(b)(2) and the Port Jersey opinion. The statute is worded in the conjunctive: “goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto.... ” N.J.S.A. 54:llA-2(b)(2) (emphasis supplied). The first phrase invokes the three-prong fixtures test and the second the materi *225 al injury test as recast in Port Jersey. Since the property in Port Jersey did not meet the material injury test, it was held to be personalty rather than realty.
When business personal property is not involved, the traditional three-prong fixtures test, with its current emphasis on intent, remains the standard. Our Supreme Court made this clear in deciding Koester, supra, on the same day the Port Jersey decision was rendered. In Koester the three-prong fixtures test alone was applied. This is not to say that material injury to the freehold occasioned by removal of the disputed property is irrelevant under this standard — certainly it may be a factor indicative of intent to permanently affix. It is not, however, a separate test to be satisfied in this context.
Presumably, the case at bar does not involve property which, if it does not become realty, is personal property taxable under the Business Personal Property Tax Act.[2] The issue is, rather, whether sales tax is due on charges for installing the property. N.J.S.A. 54:32B-3(b)(2) exempts from the tax charges for “services rendered in installing property which, when installed, will constitute an addition or capital improvement to real property, property or land.” This exemption does not explicitly mention “material injury,” as does the Business Personal Property Tax Act exemption in N.J.S.A. 54:llA-2(b)(2). Under the differing standards applied in Port Jersey and Koester, therefore it is clear that where characterization of property for purposes of the Business Personal Property Tax Act is not at issue, the standard to be applied is the traditional three-prong fixtures test, with intent to permanently affix the dominant factor.
The regulations adopted by the Division of Taxation dealing with the exception contained in N.J.S.A. 54:32B 3(b)(2)(v) concerning capital improvements provide:
(a) In determining whether an installation of tangible personal property results in a capital improvement, the following factors should be considered:
*226 1. Whether the improvement results in an increase in the capital value of the real property;
2. Whether the improvement results in a significant increase in the useful life of the real property. [N.J.A.C. 18:24-5.7(a) ]
This subsection is repeated at N.J.A.C. 18:24-5.16{f) 1 to 3,-which additionally sets forth a list of examples of capital improvements, including an in-ground swimming pool. N.J.A.C. 18:24 — 5.16(f)(3)(ix).
In National Lead the court held that the real property and business personal property tax statutes form “a comprehensive plan of taxation of real and personal property, they are in pari materia and must be read together.” 132 N.J.Super. at 37, 331 A.2d 633. In addressing the nature of the N.J.S.A. 54:11A-2(b)(2) exemption, the court found that “by excluding from that statute goods and chattels affixed to real property in the manner set forth therein, the Legislature intended that such items should be considered part of the realty and taxable as such under the local real property tax law.” Id. at 38, 331 A.2d 633. Thus, property used in business is either personalty, taxable under the Business Personal Property Tax Act, or realty, subject to real property tax. Likewise, the real property tax statute and portions of the Sales Tax Act also form a comprehensive plan of taxation of real property and personal property not used in business; they also are in pari materia and must be read together. After the personal property in question becomes a capital improvement, the improvement is subject to be assessed as real property and thereby taxed annually. If it remains personalty, and it is not used in business, it is not taxable under the Business Personal Property Tax and the only tax to which it is subjected is the sales tax upon installation charges, a one-time levy. In either event, whether it be a sales tax or an annual real estate tax, the tax is payable by the owner.
If, after the installation, the property remains personal property, the Sales Tax Act requires the installer to collect and remit a sales tax oh the installation charges. Where a contractor installs property which 'becomes part of the real property, the contractor is not to collect a tax from the customer. N.J.A.C. *227 18:24-5.7(d). However, in such a situation the Division of Taxation has adopted a regulation which provides that where any contractor has installed property which, when installed, results in a capital improvement to real property, he shall obtain from his customer a duly completed Certificate of Capital Improvement[3] (certificate), and retain it for his permanent records. N.J.A.C. 18:24-5.7(c).
As was stated in Westinghouse, the test to be applied is the traditional three-prong fixture test with intent to permanently affix being the dominant factor.
Although the court recognizes that the test is objective and that the controlling intention is that inferred from the circumstances, Fahmie, supra, 70 N.J.Super. at 317, 175 A.2d 438, the obtaining of a certificate from the owner, who would thereby subject himself to a possible increase in annual real estate taxes, would be material to the issue involved. In the case at bar, plaintiff has failed to introduce a single certificate obtained from any of the installations in dispute.
In determining whether an installation results in a capital improvement, as the court said in Feder, supra, “each case must be determined according to its particular facts and circumstances.” 53 NJ.Eq. at 372, 33 A. 399. In each of the many cases hereinabove cited concerning the real/personal property issue, detailed testimony and evidence was produced as to a description of the dominant real estate involved and its owner, ownership of the property installed,[4] exactly how the property was installed, and what, if any, damage would result to the real property if the installed property were removed.
In the instant case plaintiff has introduced no evidence whatsoever as to the manner in which any specific pool installed by it was in fact installed or affixed to the realty. Only general *228 testimony as to the way pools are recommended or intended to be installed was offered.
Assuming that all the installations in the instant case were nonbusiness related, we are bound by the three-prong fixture test as set forth in Koester, supra. In ascertaining whether the third requirement thereof has been met, the existence of the intent on the part of the owner, to permanently affix,- must be objectively determined. This intention must be judged by the physical facts or reasonably manifested outward appearances. To properly adjudge satisfaction of the three-prong test, the court additionally should have recourse to information concerning any local ordinances, zoning laws and regulations, if any, and their effect, particular facts relating to the freehold and the manner in which each pool is attached to that particular freehold, and the damage, if any, that would result from the removal of the pool. None of these facts have been presented concerning any individual installation involved in the present case.
In addition, no evidence was presented to indicate whether any installation resulted in an increase in the capital value of the real property or resulted in a significant increase in the useful life of the real property, two factors to be “considered” in determining whether an installation of tangible personal property becomes a capital improvement, as required by N.J.A.C. 18:25-5.7(a).
In Atlantic City Trans. Co. v. Taxation Div. Director, 12 N.J. 130, 95 A.2d 895 (1953), the court stated:
... It is settled in this state that “The requirement of findings is far from a technicality and is a matter of substance” and “A conclusion requires evidence to support it and findings of appropriate definiteness to express it,” in order to “enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order.” N. J. Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354, 375, 377 [75 A.2d 721] (1950). We have held that these principles are applicable to tax appeals. D., L. & W. R. Co. v. City of Hoboken, 10 N.J. 418, 424-421 [91 A.2d 739] (1952). [at 139, 95 A.2d 895]
The Director has recognized that an in-ground swimming pool is a capital improvement, N.J.A.C. 18:24-5.16(f)(3)(ix), supra, *229 and it is obvious that a small portable above-ground pool is not a capital improvement. However, pools which are constructed and installed in such a manner that they fall between the above two examples may constitute either a capital improvement or remain personalty, depending upon the specific facts and circumstances. It is possible that some of the pools installed by plaintiff have resulted in a capital improvement to the real estate; it is also possible that some have not.
Under the Sales Tax Act the receipt from every installation of tangible personal property is taxable except those enumerated under N.J.S.A. 54:32B-3(b)(2), among which is the exception for capital improvements. Therefore, it is the contractor’s responsibility to collect a tax upon all installation charges except where the installation constitutes one of the enumerated exceptions. If the installation is to real estate, it is the obligation of the contractor to either collect and remit the tax, or if it is alleged that it is a capital improvement, to secure from the owner a certificate. By a contractor’s failure to collect and remit the tax or to obtain a certificate, the contractor subjects himself to an assessment for a sales tax on the installation charges. Where such an assessment has been made by reason of the contractor’s failure to obtain the certificate, the burden is then upon him to establish that the installation was in fact a capital improvement.
There exists a presumption of correctness to an assessment made by the Director, Division of Taxation. Atlantic City Trans. Co. v. Taxation Div. Director, 12 N.J. 130, 146, 95 A.2d 895 (1953); Ridolfi v. Taxation Div. Director, 1 N.J. Tax 198, 203 (Tax Ct. 1980). From the facts submitted in the instant case the court is unable to make a finding that any of the pools installed is or is not a capital improvement to the real estate. Therefore, plaintiff has not met its burden of proof. Accordingly, defendant’s motion for summary judgment is hereby granted.
The court finds it unnecessary, in view of its finding, to decide a collateral issue raised by neither party to this action, and that is whether the land owner who has not submitted a Certificate *230 of Capital Improvement, and perhaps also the municipality in which the land is located, are necessary parties to an action wherein a seller or installer claims that the property installed became a capital improvement to realty under N.J.S.A. 54:32B-3(b)(2), supra, and thus assessable to its owner as realty.[5]

In Handler, supra, which was decided prior to New Jersey’s adoption of the Business Personal Property Act, supra, the Supreme Court ruled (2 N.J. at 25, 65 A.2d 523) that the institutional theory exemplified in Smyth Sales Corp. v. Norfolk B. & L. Ass’n, 116 N.J.L. 293, 298, 184 A. 204 (E. & A. 1935), was applicable to owner, mortgage and conditional seller situations and had not been extended to the landlord and tenant relationship.

There is insufficient evidence in the record to determine whether any of the pools installed were to be used in conjunction with a business such as a small hotel or apartment house.

Division of Taxation form ST-8.

In many cases fixtures are installed by tenants, who retain title to the property installed with the right to remove same.

Harbor Land Development Corp., Inc. v. Mirne, 168 N.J.Super. 538,403 A.2d 937 (App.Div. 1979) (doctrine of collateral estoppel).