LARIO, J.T.C.
The sole question presented by these consolidated 1985 and 1986 local property tax appeals is whether plaintiffs 250 foot-high cable antenna tower is “personal property used in business” pursuant to N.J.S.A. 54:11A-1 et seq., thereby eliminating its assessibility by the taxing district as real property under N.J.S.A. 54:4-1 et seq. The taxing district concluded the tower was real property and included its value within its improvement assessment. On appeal the Camden County Board of Taxation affirmed the assessments for both years.
The property in question is located at 604 Merchant Street and is identified as Block 148H, Lot 1 on the Borough of Audubon’s tax map. Originally the land was owned by the borough who leased the land effective March 1, 1979 to Audubon Electronics, Inc. predecessor of plaintiff, NYT Cable, a division of the New York Times Company (NYT Cable). Audubon Electronics, Inc. subsequently conveyed its interest to NYT Cable and thereafter the underlying lease was reformulated to substitute plaintiff for the original lessee. As pertinent here, the lease specifically provided in paragraphs 6 and 9 as follows:
6. It is stipulated and agreed that all buildings and improvements placed upon the premises during said term by the Lessee, its successors and assigns, shall remain the exclusive property of the Lessee, and shall be considered as personality and not as part of the real estate, and may be removed within a period of thirty (30) days after the expiration of the Lease.
9. Lessee hereby convenants within thirty (30) days after the expiration of the Lease, to remove all structures, including, but not limited to, the t.v. tower from the demised land. Removal shall consist of, but not be limited to, carting away the concrete foundation and all anchoring devices for the aforesaid tower.
Pursuant to the lease agreement there was erected upon the demised premises the tower in question plus a 16' X 20' two-story cinder-block building which houses electronic equipment. In 1985 the borough conveyed the property to plaintiff at which time the assessor placed thereon a 12-month omitted assessment for the tax year 1985 of Land—$14,500, Improvements— $85,500, Total—$100,000. It was stipulated that $11,000 of the improvement assessment was allocated to the cinder-block building and the balance of $74,500 to the tower.
*362 In 1986 Audubon put into effect a revaluation program whereby the land was assessed at $73,500 and the improvements at $186,400 for a total of $259,900. For the tax year 1986 it was stipulated that the sum of $23,981 was the assessed value placed on the cinder-block building and the remainder of $162,419 upon the tower.
Plaintiff stipulated that in neither appeal was it questioning the assessed value of the land or the cinder-block building; nor was it questioning the quantum of the respective assessment allocated to the tower. NYT Cable claims solely that the tower is not assessable as real estate, therefore, it was agreed by both parties that if the tower is deemed personal property $74,500 is to be deducted from the 1985 improvement portion of the assessment and $162,419 from the 1986 improvement portion of the assessment; otherwise the assessments were to be affirmed.
The improvement in question consists of a 250-foot high three “legged” metal structure assembled by means of nuts, bolts and washers. The metal legs form an equilateral triangle and at the base each leg is 36 feet, three and one-half inches apart, and each leg is attached by means of anchor bolts to a separate but identical concrete foundation located mainly below ground level.
Each concrete foundational pillar consists of two components; on the bottom is a 13-foot square slab atop of which is affixed a six and one-half-foot high tubular shaped pillar also of concrete. The bottom of each slab is set eight and one-half feet below ground level. Each slab is two and one-half feet high and consists of concrete reinforced by 16 no. 8 metal bars equally spaced. The sides of the slabs are beveled 24 degrees to form a trapezoidal footing. Joined atop each slab and extending upward is the six and one-half-foot high tubular shaped pillar which is three feet in diameter and also built of concrete reinforced by 16 no. 8 metal bars which are set perpendicular and attached to the 16 no. 8 metal bars set in the square slab below. They are then reinforced by eight no. 3 *363 circular metal ties which connect with the perpendicular no. 8 bars. Imbedded in the top of each of the three reinforced concrete cylinders are six one-inch by 72-inch-long anchor bolts. Sixty-five and one-half inches of each bolt is imbedded in the concrete pillar and six and one-half inches protrude above the concrete. These anchor bolts are arranged in a circle ten and one-half inches in diameter. A square metal base plate between three-quarters and one inch thick is then fitted over the six bolts and attached in such a way as to leave a small gap between the top of the concrete pillar and the bottom of the base plate. The purpose of the gap is to permit drainage of water and help prevent moisture build-up. The bottom portion of the legs of the steel tower are then placed over the bolts and secured by nuts. The legs are constructed of steel bars bolted to each other and extending diagonally upward. The legs are also bolted to webbed cross-bar sections. This pattern continues upward to a height of 250 feet where the legs meet at the top of the triangle. Attached to the metal tower at various heights are electronic “dishes” which receive and transmit microwave signals for cable television.
An employee of plaintiff who had a certificate in electronics testified he was responsible for the overall design, construction and maintenance of all plaintiffs tower sites. He stated that he observed most of the subject’s installation. The method of installation, he testified, is to first dig a hole for the foundation, prepare concrete forms and pour the foundations with mounting bolts in place. After the concrete has hardened the steel portion of the tower is constructed on top by bolting it to the concrete foundation’s bolts. He further stated that two or three years ago he had ordered a similar structure removed. Although that removal was subcontracted to another company, he testified he was familiar with the process of removal; that removal would start at the top of the tower and it would be dismantled piece by piece until they got to the bottom metal piece which would then be unbolted from the concrete foundation. In removing the last metal piece the concrete foundation would not be disturbed in any way and the bolts would remain *364 protruding approximately six and one-half inches. He further stated that the towers are sometimes removed if they are too short or if that particular site is no longer useable for the company. They have three other similar towers in the area, the largest is the subject property; the other three are 240-feet, 210-feet and 180-feet high respectively.
Plaintiff claims that because the steel towers can be removed from the concrete base by merely disassembling the metal frame and unbolting the bottom “legs” from the concrete foundation there would be no material injury to the land.
Plaintiff further claims that the removal of towers of this type is not an uncommon practice and that the removal process consists of removing the antenna, the electronic elements and the feed lines, and then dismantling and removing the steel itself; that the section of the tower closest to the ground is removed by disconnecting the bolts which secure the sections to the base, and in the course of doing so the concrete base and ground remain totally undisturbed. It argues that this tower may be removed without injury to the freehold, therefore it should be deemed business personal property, citing Bayonne v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979); Sta-Seal, Inc. v. Taxation, Div. Director, 5 N.J.Tax 272 (1983), aff’d 6 N.J.Tax 345 (App.Div.1984), and Stem Bros., Inc. v. Alexandria Tp., 6 N.J.Tax 537 (Tax Ct.1984).
Defendant responds that in Bayonne the property in issue was acquired prior to 1977 whereas the subject property was acquired in 1979 and by reason of the passage of L.1977, c. 4, N.J.S.A. 54:11A-3.1, whereby any equipment acquired on and after January 1, 1977 is excluded from taxation under the Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq. (BPPTA), that the holding in Bayonne is no longer applicable; and in the alternative, that plaintiff has failed to establish that the tower could be removed without material injury to the tower itself or the real estate.
Initially, I find no merit to Audubon’s claim to the effect to be given to L.1977, c. 4. In Bayonne, the Court concluded that *365 one of the Legislature’s avowed purposes, to be achieved by the adoption of the BPPTA, was to remove business personal property from local real property taxation in order to create “a fiscal climate in New Jersey that would be attractive to corporations and industries generally.” 79 N.J. at 378, 399 A.2d 649. The Court further concluded that the intent of the c. 4 amendment was as stated in the statement of purpose attached to the bill; to wit: “This bill as amended ... is intended by its proponents to make capital investments in New Jersey more attractive----” Id. at 379, 399 A.2d 649. Therefore it concluded that the Legislature’s objective in adopting c. 4 obviously was to create an even better fiscal climate to attract industry by completely eliminating, at both the local and state level, taxation of personal property used in business acquired after January 1, 1977.
In Bayonne, our Supreme Court further concluded that by the adoption of the Business Personal Property Tax Act our Legislature replaced the so-called “institutional doctrine,” the then current method of distinguishing realty from personalty for tax purposes, with the “material injury” test; i.e., “goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto”. Id. at 378, 399 A.2d 649.
After the Bayonne decision our Legislature enacted A. 1986, c. 117, which amended the standards (as set forth in N.J.S.A. 54:4-1 and N.J.S.A. 54:11A-2) for determining whether property is taxable as real or personal. As amended N.J.S.A. 54:4-1 now states in pertinent part:
... Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless:
a. (1) The personal property so affixed can be removed or severed without material injury to the real property; (2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and (3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or
b. The personal property so affixed is machinery, apparatus, or equipment which is neither functionally essential to a structure the personal property is *366 within or to which the persona] property is affixed nor constitutes a structure itself.
Also as amended by c. 117, N.J.S.A. 54:11A-2 states:
(b) “Personal property used in business” shall mean tangible goods and chattels used or held for use in any business, transaction, activity or occupation conducted for profit, but shall not include:
(2) goods and chattels which are taxable as real property pursuant to N.J.S.A. 54:4-1;....
Thus, by the adoption of L. 1986, c. 117, which applies to the present appeal [1], the tower in question is taxable as real property unless (1) it is not ordinarily intended to be affixed permanently to real property; and (2) if not so intended, if it can be removed without material injury to the real property or to the tower itself. These two prerequisites to exclude business personal property from being taxed as realty were interpreted by this court, sitting en banc, in Chevron U.S.A., Inc. v. Perth Amboy, 9 N.J.Tax 205 (Tax Ct.1987). In applying the statutory language “it is not ordinarily intended to be affixed permanently to real property” to the refinery property therein under appeal, we stated:
The use of the word “ordinarily” 23 before the word “intended” shifts the focus of the inquiry from what is actually intended with respect to plaintiffs refinery, to what is “ordinarily intended” with respect to property like the refinery in question.
Initially, the fact that property is removable without physical injury to it or to the freehold does not stand in the way of the conclusion this court made that the same property is intended to be affixed permanently to the freehold. See Westinghouse Broadcasting Co., Inc. v. Taxation Div. Director, 141 N.J.Super. 301, 306-307 [ 358 A.2d 203] (App.Div.1976).
Secondly, both parties argue that the “physical facts or reasonably manifested outward appearances” ought to control the issue of intent. In support, they cite Bostian v. Franklin State Bank, 1 N.J.Tax 270, 276 (Tax Ct.1980). The court there stated:
*367 Put another way, the intention test, objectively applied, means: What would a reasonable person consider part of the realty so as to pass with a deed or mortgage. [Ibid.']
However, Bostian was decided prior to the enactment of c. 117 and does not constitute an application of the precise language of the statute. Nevertheless, we believe that, though not controlling, at least to the extent that they bear on the question of ordinary intent, outward appearances are a relevant consideration in applying c. 117. [at 242; footnotes omitted],
23 According to The American Heritage Dictionary, (2 coll.ed.1982) "ordinarily" means:
1. As a general rule; usually.
2. In the regular or usual manner: ...
Westinghouse Broadcasting Co., Inc. v. Dir. Div. of Tax., supra, decided prior to Bayonne involved the taxability of towers constructed in a manner similar to those under appeal in the instant case except that they were installed to support equipment for transmitting radio signals rather than for equipment designed to receive and retransmit television signals. The design and construction of the radio tower’s foundation and metal superstructure were almost identical to the cable TV tower here. To determine whether the tower was realty or personalty the Appellate Division applied the three-prong test reiterated in National Lead Co. v. Sayerville, 132 N.J.Super. 30, 331 A.2d 633 (App.Div.1975), following Fahmie v. Nyman, 70 N.J.Super. 313, 175 A.2d 438 (App.Div.1961), which included as its third requirement: “intended by the party making the annexation to be a permanent accessation to the freehold.” Id. at 316-317, 175 A.2d 438.
Although National Lead was overruled by Bayonne, by the subsequent adoption of N.J.S.A. 54:4-1(a)(3) which provides that
[r]eal property taxable under this chapter ... includes personal property affixed to the real property or an appurtenance thereto unless: ... (3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property, ...
the Legislature manifested its intent to reinstate the “third prong” of the “three-prong test” set forth in Fahmie v. Nyman and followed by National Lead. Therefore, the Westinghouse court’s following comments relative to intent are especially appropriate:
*368 The modern view is that the intention in the placement of the structure on the land is the dominant factor to be considered in making the determination of its character. Fahmie v. Nyman, supra 70 N.J.Super. at 317 [ 175 A.2d 438].11
Petitioner emphasizes the testimony indicating that the towers can be disassembled and removed and claims support in the National Lead Co. case for the conclusion that the towers are personalty. We do not agree that the principles of National Lead Co. require this conclusion. Moreover, the property there, consisting of a large operating industrial complex comprised of many buildings and numerous items of equipment, all involved and used in a continuous process operation, is distinguishable from the property in the case at hand. We are here concerned with structures erected on the land and affixed to concrete foundations; we are not concerned with machinery contained in a structure which may be replaced or removed. The fact that the towers could be unbolted, disassembled and removed is not controlling. Speiden v. Parker, 46 N.J.Eq. 292 [ 19 A. 21] (E. & A. 1889); Feder v. Van Winkle, 53 N.J.Eq. 370 [ 33 A. 399] (E. & A. 1895). Virtually all property can be removed from land without materially damaging the land itself. [Id. 141 N.J.Super. at 305-307, 358 A.2d 203]
The court then concluded:
The towers herein are structures which have been attached directly to the land and are improvements thereto. The fact that structures, whether enclosed or not, can be removed and the land restored to its original condition does not determine their taxable status. Here the towers were fixed with the intention that they should remain permanently in place so long as they can be used by petitioner or others for radio broadcasting. [Id. 307-308, 358 A.2d 203]
In the present case although the former lease between plaintiffs predecessor and the borough stipulated that the tower remained property of the lessee and required that at its expiration the tower, including the reinforced concrete foundation, was to be removed, this fact is not controlling as to the tower’s taxability as an improvement to real property. This issue was fully addressed by Justice Jacobs in Koester v. Hunterdon Cty. Bd. of Tax., 79 N.J. 381, 399 A.2d 656 (1979), (decided the same day as Bayonne, supra) wherein he stated:
The mobile home owners have stressed that their homes are on leased land and that although they have renewal options they also have the privilege of removal. But that does not alter the fact that while their homes remain at Solitude Village they constitute land improvements taxable as real property. Indeed there are many buildings throughout the State which have regularly been dealt with for tax purposes as land improvements though they stand on leased land and are subject to private contractual arrangements embodying, inter alia, the privilege of removal. In Becker v. Little Ferry, supra, 125 *369 N.J.L. [141] at 144 [14 A.2d 493 (1940) ], the former Supreme Court pointed out that while “it is quite within the law” for parties to make such an arrangement, the land and the building remain taxable as real property, [at 392, 399 A.2d 656]
In the application of N.J.S.A. 54:4-1(a)(3), the third of the three prerequisites of c. 117 to determine the excludability of personal property from being taxes as realty, the test is not what plaintiff actually intended as to its permanency but whether property installed similar to the subject tower is not “ordinarily” intended to be affixed permanently to real property. Chevron U.S.A., Inc. supra.
From the method of installation and the reinforced concrete and stone backfill used in the installation of the footings and foundations of this tower, I find that plaintiffs predecessor did not intend, plan or expect that these towers would be removed shortly. The testimony presented by plaintiff was that towers of this type are sometimes removed only if they are too low or if that particular site is no longer useable. The fact that plaintiff purchased the land after the towers had been installed and placed in use certainly creates an inference that plaintiff had determined that the site was suitable and correct for its use as a cable tower. This, coupled with the fact that this tower is the tallest tower in the area, confirms my prior finding that plaintiff’s predecessor intended to retain this tower in its present location for the foreseeable future.
I conclude that as of the date of this tower’s installation a prudent cable TV company ordinarily would intend that the tower should remain in place as long as it could be used for cable TV purposes and that this use would not be curtailed within the foreseeable future, but was “ordinarily intended to be affixed permanently to the real property.” Therefore, the tower is not “personal property used in business” as defined by N.J.S.A. 54:11A-2(b)(2), but instead is taxable as an improvement to real property pursuant to N.J.S.A. 54:4-1.
Although the above conclusion obviates the necessity of addressing the issue of material injury, in order to present a complete factual record in the event of an appeal this issue will *370 be determined. N.J.S.A. 54:4-1 as amended by c. 117 provides that real property subject to local taxation “includes personal property affixed to the real property or an appurtenance thereto unless:
a. (1) The personal property so affixed can be removed or severed without material injury to the real property; ... or to the personal property itself;____”
In Chevron, supra, this court also considered the meaning of the phrase “material injury” as found in c. 117 and we determined:
Since the Legislature continued in c. 117 to use the phrase, “material injury,” it must be presumed that it agreed with the meaning of that phrase in the unamended N.J.S.A. 54:11A—2(b)(2) as interpreted in the decisional law, i.e., City of Bayonne v. Port Jersey Corp., 79 N.J. 367 [399 A.2d 649] (1979) and its progeny, [at 233]
We then reviewed the “material injury” test as set forth in Bayonne, and in the subsequent decisions of this court and the Appellate Division applying the Bayonne test.
As previously noted the Bayonne Court determined that the BPPTA was adopted to attract industry, however, the intent of this legislation was not to remove real property from local taxation nor was that the interpretation placed upon it by the Bayonne Court. The purpose and intent of the act as originally adopted and also as amended by c. 117 was to more clearly define when “machinery,” “apparatus” and “equipment” used in business and affixed to real property loses its character as personal property and becomes part of the realty. In Westinghouse Broadcasting, supra, after setting forth the statutory definition of personal property used in business, to wit: “goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material damage thereto; [N.J.S.A. 54:11A-2(b)(2) ]” the court stated:
Various tests have been established to determine when a movable chattel loses its character as personalty and becomes a fixture and, thus, part of the realty. [ 141 N.J.Super, at 305, 358 A.2d 203]
Throughout the Business Personal Property Tax Act, Bayonne, the cases that have interpreted Bayonne and c. 117, the refer-. enees are to “goods and chattels,” “mpvable chattels and machinery and equipment” that might lose their character as *371 personal property when attached to realty. They do not refer to improvements that are primarily real estate. It is noted that in Bayonne the property consisted of three 500-ton cranes and although extremely large and heavy they were movable equipment. Here the tower consists of the steel reinforced concrete foundation and its metal triangular superstructure. The total structure was intended to be built as a whole unit and as completed it constitutes a unitary improvement to real estate; the metal superstructure portion was never “goods and chattels,” or “machinery,” or “equipment” that was attached to real estate. This conclusion, that the tower is a single unit, is implicitly recognized by plaintiff by its stipulation that if the tower is deemed personal property, $74,500 is to be deducted from the 1985 improvement portion of the assessment and $162,419 from the 1986 portion of the improvement assessment. These figures represent the total assessed value of the entire tower without any division between the superstructure portion and the foundation. The steel vertical and diagonal cross bars, concrete, no. 8 metal bars and circular metal ties when utilized together in the construction resulted in a single structure and an improvement to the freehold. As stated in Westinghouse, supra:
We are here concerned with structures erected on the land and affixed to concrete foundations; we are not concerned with machinery contained in a structure which may be replaced or removed. [ 141 N.J.Super. at 306, 358 A.2d 203]
Here, the goods and chattels attached to the real property are the machinery and equipment consisting of the antenna, the cable dishes and the other electronic equipment actually used in receiving and retransmitting microwave signals. The tower supports that equipment, but the tower itself (the superstructure and the foundation as a single unit) is not personal property that has been annexed to real property.
Additionally, I note that the specifications for the foundation layout placed in evidence provided that “the existing soils that are excavated are not suitable as backfill” therefore it directs that after the concrete forms have been removed from the concrete, the property should be backfilled with “granular soils *372 such as a well-compacted sand or a clean well-graded gravel or crushed stone having a clay binder and compacted to a density of at least 100# 1 cu. ft.” This backfill also would remain after removal of the superstructure and would constitute material injury.
Accordingly, I conclude that the metal superstructure is part of the real estate and not “goods and chattels” or “personal property so affixed to the real property.” However, in the event that it is so determined to be personal property affixed to real property, I then conclude that the metal superstructure’s removal would materially injure the freehold. There would remain imbedded in the ground the 13-foot-deep reinforced concrete foundation backfilled with crushed stone with six inches of the concrete protruding from ground level and six one-inch anchor bolts projecting five-and-one-half inches. I find that this remainder would constitute material injury to the freehold.
Accordingly, it is concluded that the towers in question are real property and were properly assessed as such. The judgments of the county board of taxation are affirmed.

L.1986, c. 117, § 4 provides "this act shall____be applicable to any proceeding pending in any court.”